MARK REGAN, Plaintiff v. AMERIMARK BUILDING PRODUCTS, INC., CLEM FOX AND MICHAEL WLOCK, Defendants

No. COA96-1358

(Filed 19 August 1997)

1. **Workers' Compensation § 62 (NCI4th)— paint coater— absence of safety guard—OSHA violation—insufficient evidence to support *Woodson* claim**

In an action which resulted from plaintiff employee's injury while he was cleaning a paint coater without a safety guard, the trial court properly granted summary judgment in favor of defendant employer where plaintiff failed to produce evidence that defendant knew that its action of requiring plaintiff to operate the coater without a guard was substantially certain to cause serious injury or death, an essential element of a *Woodson* claim. The evidence indicated that the employer was aware that the coater was unguarded; the unguarded coater was in violation of OSHA regulations; defendant was cited with an OSHA violation for not having a guard on the coater; the plaintiff was required to manually clean the unguarded coater; defendant was working to satisfy the OSHA requirements; and OSHA had given defendant permission to continue operation and remedy the area where plaintiff was injured beyond the date of the injury. Moreover, there was no evidence that there were previous injuries while operating the paint coating machine in the same manner as plaintiff and there was no evidence that the cut-off switches were not working properly.

2. **Workers' Compensation § 69 (NCI4th)— injuries at work— action against supervisors—conduct was not willful, wanton or reckless**

The trial court correctly granted summary judgment in favor of defendant supervisors in plaintiff's action to recover for work-related injuries sustained while manually cleaning a paint coater, even though the evidence presented by plaintiff showed that both supervisors were aware that the coater was unguarded and required plaintiff to manually clean the coater, where there was no evidence from which a trier of fact could conclude that defendants engaged in conduct that was willful, wanton or reckless or that they were manifestly indifferent to the consequences of requiring plaintiff to manually clean the coater.

Judge GREENE dissenting.

Appeal by plaintiff from order dated 10 September 1996 by Judge Henry V. Barnette, Jr., in Wake County Superior Court. Heard in the Court of Appeals 4 June 1997.

*Glenn, Mills and Fisher, P.A., by Robert B. Glenn, Jr., for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by David H. Batten and David K. Liggett, for defendant-appellee Amerimark Building Products, Inc.; and Womble, Carlyle, Sandridge & Rice, by David A. Irvin, for defendants-appellees Clem Fox and Michael Wlock.*

WALKER, Judge.

Plaintiff was employed by defendant Amerimark Building Products, Inc. (Amerimark) and worked on "paint line No. 2" operating the "coater." As part of his job, plaintiff was required to clean a steel drum that was part of the coater. To clean the drum, plaintiff would scrape the drum with a piece of scrap metal while the paint line continued operating. On 7 April 1993, plaintiff was scraping the drum when his hand got caught and he was pulled into the coater. Plaintiff attempted to stop the paint line by using the two emergency cut-off switches; however, the switches failed to operate and did not stop the line. As a result of being pulled into the coater, plaintiff suffered severe and disabling injuries. At the time he was injured, plaintiff was under the supervision of defendants Wlock and Fox.

The coater was designed to have a "doctor blade" attached to it which guarded the coater's ingoing nip points and prevented an employee from having to manually scrape the blade. Although the coater originally had a "doctor blade," at some point prior to the injury in question it was removed and at the time of injury it lay on the floor beside the machine.

On 4 January 1993, Amerimark was issued citations for several serious violations of the Occupational Safety and Health Act (OSHA), including the failure to provide "[m]achine guarding . . . to protect operator(s) and other employees from hazards created by . . . ingoing nip points" on "paint line No. 2." The citations required Amerimark to abate or correct the violations on or before 11 January 1993. Amerimark sought an extension of time in which to abate the violations. With respect to the hazard created by the "ingoing nip points"

on "paint line No. 2," Amerimark was given until 12 July 1993 to make the correction. Amerimark began efforts to abate other violations immediately; however, plaintiff was injured prior to the abatement of the OSHA violation relating to the coater which plaintiff was operating.

On 13 October 1993, plaintiff filed a complaint against Amerimark and co-employees Wlock and Fox alleging that the coater used by him lacked safety guards which would prevent him from having to place his hands into the machine. Further, he alleged that defendants knew that the emergency cut-off switches were not functioning properly at the time of the accident and failed to warn him. On 25 February 1994, the trial court granted defendants' motion to dismiss under Rule 12 (b)(6) for failure to state a claim upon which relief can be granted. This Court reversed the order dismissing the case. Thereafter, defendants moved for summary judgment which was granted by the trial court.

"Summary judgment is proper where the pleadings, depositions, interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law." *Silvers v. Horace Mann Ins. Co.*, 90 N.C. App. 1, 4, 367 S.E.2d 372, 374 (1988), *modified*, 324 N.C. 289, 378 S.E.2d 21 (1989). We must determine whether the plaintiff's forecast of evidence raises issues of fact regarding defendant Amerimark's liability under *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991). *See also, Mickles v. Duke Power Co.*, 342 N.C. 103, 463 S.E.2d 206 (1995); and regarding the liability of defendants Wlock and Fox under *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985).

[1] As a general rule, the Workers' Compensation Act provides the exclusive remedy for employees injured in a workplace accident. N.C. Gen. Stat. § 97-9, -10.1 (1991). However, in *Woodson*, our Supreme Court carved a narrow exception to the general rule when it held that when an "employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct," an employee may maintain a tort action against the employer. *Woodson*, 329 N.C. at 340-41, 407 S.E.2d at 228. Substantial certainty is more than a possibility or substantial probability of serious injury but is less than actual certainty. *Pastva v. Naegele Outdoor Advertising*, 121 N.C. App. 656, 658-59, 468 S.E.2d 491, 493 (1996).

REGAN v. AMERIMARK BUILDING PRODUCTS

[127 N.C. App. 225 (1997)]

*See also, Mickles v. Duke Power Co.*, 342 N.C. 103, 463 S.E.2d 206 (1995). The elements of a *Woodson* claim are: (1) employer misconduct; (2) intentionally engaged in; (3) knowledge that the conduct is substantially certain to cause serious injury or death to an employee; and (4) that employee is injured due to the misconduct. *Id.* at 659, 468 S.E.2d at 206.

In *Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 424 S.E.2d 391 (1993), a case with facts very similar to the case at hand, our Supreme Court concluded the evidence was insufficient to establish a *Woodson* claim. In *Pendergrass*, the plaintiff was injured when his employer instructed him to work at a machine knowing that certain dangerous parts were unguarded, in violation of OSHA regulations and industry standards. *Id.* at 238, 424 S.E.2d at 394. Our Supreme Court noted that "[a]lthough [the employer] may have known certain dangerous parts of the machine were unguarded when they instructed Mr. Pendergrass to work at the machine, we do not believe this supports an inference that they intended that Mr. Pendergrass be injured or that they were manifestly indifferent to the consequences of his doing so." *Id. See also, Kolbinsky v. Paramount Homes, Inc.*, 126 N.C. 533, 485 S.E.2d 900 (1997).

In the instant case, the evidence considered in the light most favorable to the plaintiff shows that the employer was aware that the coater was unguarded; the unguarded coater was in violation of OSHA regulations; the employer was in fact cited with an OSHA violation for having no guard on the coater; and the unguarded coater required that the plaintiff clean it manually.

There was also evidence that Amerimark was working to satisfy OSHA requirements, and that OSHA had given permission for Amerimark to continue plant operations as well as permission to remedy the area in question beyond the date of injury. Moreover, there was no evidence of any serious injury prior to the injury to plaintiff while operating the coater in the same manner as plaintiff. In fact, plaintiff himself testified that he had previously cleaned the coater ten to twenty times per shift and that he was working seven days a week. There was no evidence that the cut-off switches were not working properly or that they were redesigned or rewired after this accident.

In sum, the plaintiff failed to present evidence that Amerimark knew that its action of requiring plaintiff to operate the coater without a guard was substantially certain to cause serious injury or

**REGAN v. AMERIMARK BUILDING PRODUCTS**

[127 N.C. App. 225 (1997)]

death. Therefore, plaintiff has failed to produce evidence of an essential element of a *Woodson* claim. Accordingly, the trial court's granting of summary judgment in favor of defendant Amerimark was proper.

[2] We must next examine whether the trial court's grant of summary judgment in favor of defendants Wlock and Fox was proper. In *Pleasant v. Johnson*, 312 N.C. 710, 714, 325 S.E.2d 244 (1985), our Supreme Court carved another exception to the exclusive remedy doctrine in the context of conduct of a co-employee. In *Pleasant*, the co-employee defendant drove a truck in a company parking lot with the intention of getting as close to the plaintiff as possible without hitting him. The plaintiff was struck by the truck. The Court said that defendant's actions constituted willful, wanton and reckless negligence and although plaintiff was allowed to recover compensation benefits, he could also pursue a civil action against the defendant supervisor. *Id.* at 717, 325 S.E.2d at 249. Further, in defining such negligence the Court noted that when the conduct of the defendant is manifestly indifferent to the consequences of the act a constructive intent to injure may be inferred. *Id.* at 715, 325 S.E.2d at 248.

In *Pendergrass*, the plaintiff also brought a negligence claim against his supervisors. The Supreme Court upheld the dismissal of the claim on the basis that even if they instructed the plaintiff to work on a machine they knew was unguarded, this conduct did not support an inference that the supervisors were manifestly indifferent to the consequences of plaintiff working at the machine. *Pendergrass*, 333 N.C. at 238, 424 S.E.2d at 394.

Likewise, even though the evidence here shows that both Wlock and Fox were aware that the coater was unguarded and required plaintiff to manually clean the coater, there was no evidence from which a trier of fact could conclude that Wlock and Fox engaged in conduct that was willful, wanton or reckless or that they were manifestly indifferent to the consequences of requiring plaintiff to manually scrape the coater. Thus, the trial court's granting of summary judgment in favor of defendants Wlock and Fox was proper.

Affirmed.

Judge GREENE dissents.

Judge JOHN concurs.

Judge GREENE dissenting.

I would reverse the trial court and remand for trial.

The evidence[1] viewed in the light most favorable to Mark Regan (plaintiff), *Hinson v. Hinson*, 80 N.C. App. 561, 563, 343 S.E.2d 266, 268 (1986) (evidence at summary judgment hearing viewed in the light most favorable to the nonmovant), reveals that as an employee of Amerimark, plaintiff operated the "coater" on "paint line No. 2." As part of his job, plaintiff was required to clean a steel drum that was part of the coater. To clean the drum plaintiff would scrape the drum with a piece of scrap metal while the paint line continued to operate. On 7 April 1993 plaintiff was scraping the drum when his hand was caught and he was pulled into the coater, resulting in a punctured right lung, broken neck, mangled right arm, and other serious injuries. At the time he was injured plaintiff was under the supervision of both Wlock and Fox.

The coater was designed to have a "doctor blade" attached to it which guarded the coater's ingoing nip points and prevented the employee from having to manually scrape the drum. Although the coater originally had a "doctor blade," at some point prior to the injury in question it was removed and at the time of the injury it lay on the floor beside the machine.

Amerimark equipped the coater with two emergency switches (E-stops) that would shut down the paint line if pressed. After his hand became caught in the coater, plaintiff attempted to stop the paint line by using the E-stops but they did not work. Marcy Regan, plaintiff's wife, recalled a conversation between herself and Phillip McAllister (McAllister), Amerimark's Human Resources and Training Manager, during which McAllister told her that plaintiff was "doing a routine procedure" when the accident occurred and that Amerimark was "aware that [the E-stops] were not functioning" and that "work orders had been done to repair them," and "they just had not gotten around to that yet." If plaintiff had been aware that the E-stops were not operational, he would not have scraped the drum while it was moving.

Plaintiff had been instructed on how to clean the coater by Jamie Nelson (Nelson), an employee of Amerimark. Nelson stated that it was "common knowledge in the plant that there was a risk of having

---

1. I review the evidence because I believe the summary of the evidence given by the majority fails to mention several important details.

**REGAN v. AMERIMARK BUILDING PRODUCTS**

[127 N.C. App. 225 (1997)]

your hands or arms caught in the [coater] while . . . scraping" it. Nelson also revealed that the E-stops were "never tested and . . . painted shut" and nothing was done to make the E-stops operational. Plaintiff was cleaning the coater as he had been taught at the time his hand became caught in the coater. Other Amerimark employees, while cleaning the coater, had "come close to being seriously injured" when their rags and/or gloves had been "jerked off their hands when they hit a dry spot" on the coater drum, as happened to plaintiff. According to plaintiff, some of these employees bruised or burned their hands while cleaning the coater.

On 28 July 1992, prior to plaintiff's injury, Wlock made a suggestion that a "doctor blade" be installed at the point where plaintiff was subsequently injured "so that the operators won't have to reach in as often" to clean the drum. Wlock also suggested that a "line stop cable" be installed around the coater to enable the operator to easily stop it. According to Wlock's suggestion form, while he did not know of any previous injuries occurring "in these areas, they are bad pinch points with the potential for disaster." Despite making the suggestions, Wlock did not have them implemented. A report by Wlock dated 8 April 1993, after plaintiff's injuries, states that his suggestions concerned the "very spot" where plaintiff was injured.

Maintenance manager John Swanik (Swanik) stated that he would not expect any of his employees to do anything he would not do and, referring to scraping the coater by hand, "this technique here, I would not do."

On 4 January 1993 Amerimark was cited by the North Carolina Department of Labor, Division of Occupational Safety and Health, for several "serious"[2] violations of the Occupational Safety and Health Act (OSHA), including the failure to provide "[m]achine guarding . . . to protect operator(s) and other employees from hazard(s) created by . . . ingoing nip points" on "paint line No. 2." McAllister stated that plaintiff's injuries occurred at an ingoing nip point on "paint line No. 2."

The citations required that Amerimark abate or correct the violations on or before 11 January 1993. On 8 January 1993 Amerimark

---

2. A "serious violation" exists "if there is a substantial probability that death or serious physical harm could result from a condition which exists" in the place of employment "unless the employer did not know, and could not, with the exercise of reasonable diligence, know of the presence of the violation." N.C.G.S. § 95-127(18) (1993).

requested an extension of time in which to abate the violations. With respect to the hazard created by the "ingoing nip points" on "paint line No. 2," Amerimark was given until 12 July 1993 to make the correction. At the time the extension was granted, OSHA informed Amerimark that although an extension was being granted, "you are to insure that your employees are not exposed to hazards while abatement is being accomplished."

Immediately after plaintiff was injured Swanik installed a protective guard and a line stop cable on the coater where plaintiff was injured. The time to install both was approximately four hours and the cost was approximately $300.00. Furthermore, most of the parts for both apparatus were already located at the Amerimark facility.

I

*Claim against Amerimark*

Some of the factors to be considered when determining if the employer had knowledge that the misconduct was substantially certain to cause serious injury or death to an employee include: (1) whether the activity giving rise to the injury was inconsistent with a current OSHA standard; (2) whether the employer had received, prior to the injury, a citation for an OSHA violation regarding the activity that gave rise to the injury; (3) whether the employer or its representative (*i.e.*, employee's supervisor) had knowledge of the dangerousness of the activity engaged in by the employee; (4) whether with knowledge of the dangerousness of the activity, the employer or its representative directed the employee to perform the task; (5) whether there was a high probability that the activity engaged in by the employee was likely to cause death or serious bodily injury; and (6) whether there had been any prior serious injuries or death caused to an employee performing the activity in question. *See Woodson v. Rowland*, 329 N.C. 330, 346, 407 S.E.2d 222, 231-32 (1991); *see also Mickles v. Duke Power Co.*, 342 N.C. 103, 111, 463 S.E.2d 206, 211 (1995).

The evidence considered in the context of these factors and in the light most favorable to the plaintiff, reveals a genuine issue of fact as to whether Amerimark knew that operation of the coater was substantially certain to cause serious injury or death to plaintiff. I would therefore reverse the entry of summary judgment for Amerimark.[3]

3. I would reject the argument of Amerimark that *Mickles v. Duke Power Co.*, 342 N.C. 103, 463 S.E.2d 206 (1995), requires that we affirm the entry of summary judgment in this case. The Supreme Court in *Mickles* determined that because there had been only three "widely scattered instances [of injuries from roll-outs] over a sixteen-year

**REGAN v. AMERIMARK BUILDING PRODUCTS**

[127 N.C. App. 225 (1997)]

Prior to plaintiff's injuries it was common knowledge throughout Amerimark that the practice of cleaning the coater by scraping the drum was dangerous. Swanik, the maintenance manager, indicated that the procedure to clean the coater drum taught to plaintiff was dangerous and something he would not do himself. Wlock, plaintiff's supervisor, knew of the danger, as evidenced by his suggestion to install more guards on plaintiff's coater. Despite this knowledge plaintiff was instructed that this was the proper way to clean the coater. Further, plaintiff's instructor, Nelson, as well as McAllister, knew that the E-stops vital to the operator's safety were not operational and in fact they did not operate properly when plaintiff tried to use them.

The operation of the coater without machine guarding to protect the employee was in violation of OSHA regulations and this was brought to the attention of Amerimark on 4 January 1993 when citations (alleging violations of current OSHA regulations) were issued by the North Carolina Department of Labor. The citations classified the violations as "serious," suggesting that there was a substantial probability that death or serious physical harm could result if the "ingoing nip points" were not properly guarded. Despite receipt of the citations Amerimark continued to operate the paint line without making any changes to the way the plaintiff operated the coater and without taking steps to protect the plaintiff.[4]

I acknowledge that there is no evidence that prior to the injuries received by the plaintiff any employee died or received serious bodily injury while operating the coater.[5] The absence of any evidence on

---

period" and "over eleven million man-hours aloft without a single incident of roll-out" the forecast of evidence "indicates only that defendant was aware of the somewhat remote possibility" of roll-out. *Id.* at 111-12, 463 S.E.2d at 211-12. In that case the Court stated that defendant did not know its conduct was substantially certain to cause serious injury or death because, in part, defendant had never been cited "for an OSHA violation regarding roll-out, and OSHA standards at the time of Mickles' death" did not require any different equipment. *Id.* at 111, 463 S.E.2d at 211. In this case, Amerimark knew that the coater posed a threat to plaintiff and the knowledge of this danger was reaffirmed upon receipt of the "serious" OSHA citation.

4. Although Amerimark was given an extension of time (extending beyond the time the plaintiff was injured) in which to correct the violations, it was conditioned on the requirement that Amerimark not expose its employees to hazards "while abatement is being accomplished."

5. The record does show, however, that several employees had "come close to being seriously injured" when their rags and/or gloves had been "jerked off their hands when they hit a dry spot" on the coater drum.

this factor, however, does not require entry of summary judgment for Amerimark, as the presence or absence of evidence on any factor(s) is not conclusive on the issue of the employer's knowledge (or lack of knowledge) of misconduct that is substantially certain to cause serious injury or death. *Regan v. Amerimark Bldg. Prods.*, 118 N.C. App. 328, 331, 454 S.E.2d 849, 852 ("No one factor is determinative in evaluating whether a plaintiff has stated a valid *Woodson* claim."), *disc. rev. denied*, 340 N.C. 359, 458 S.E.2d 189 (1995), *cert. denied*, 342 N.C. 659, 467 S.E.2d 723 (1996). Indeed in *Woodson* there was no evidence of any prior deaths or serious injuries by the defendant's employees arising from work in trenches. *See Pastva v. Naegele Outdoor Advertising*, 121 N.C. App. 656, 659, 468 S.E.2d 491, 492-93 (reversing dismissal of *Woodson* claim even though no evidence of prior serious injury or death), *disc. rev. denied*, 343 N.C. 308, 471 S.E.2d 74 (1996).

## II

### *Claims against Fox and Wlock*

This case is distinguishable from *Pendergrass*, relied upon by the majority. In this case the unguarded pinch-points on the coater could have been easily and cheaply fixed and both Wlock and Fox were aware of such problem but failed to follow up on Wlock's suggestion to install a "doctor blade" and take other measures to protect the coater operator. Further, plaintiff had been trained to rely on the E-stops to stop the line in case of an emergency, but evidence presented by plaintiff shows that the E-stops were not operable and failed when plaintiff attempted to use them.

If the E-stops were not operable and Wlock and Fox knew of this, but required plaintiff to continue operating the coater despite the knowledge that the coater was being operated in a dangerous manner, a reasonable person could conclude that Wlock's and Fox's conduct was manifestly indifferent to its consequences. As noted by this Court in an earlier opinion dealing with this same case, the "failure to inform plaintiff that the [E-stops] on his machine were not functioning properly demonstrates a much higher level of indifference to employee safety than that alleged in *Pendergrass*." *Regan*, 118 N.C. App. at 331, 454 S.E.2d at 852. Genuine issues of fact are presented and summary judgment as to Wlock and Fox was therefore error.