FREDERICK TINCH, Plaintiff v. VIDEO INDUSTRIAL SERVICES, INC., WESTERN TEMPORARY SERVICES, INC., HENDON ENGINEERING ASSOCIATES, INC., METROPOLITAN SEWERAGE DISTRICT OF BUNCOMBE COUNTY, AND CARYLON CORPORATION, Defendant

No. COA96-155

(Filed 17 March 1998)

**Workers' Compensation § 62 (NCI4th)— injury while tending winch—failure to show *Woodson* claim**

A temporary laborer who was seriously injured while tending a winch failed to show that defendant employer intentionally engaged in conduct substantially certain to cause injury so as to support a civil action under the standard set forth in *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222, where his forecast of evidence tended to show that plaintiff was pulled into the winch when he struck the cable with his gloved hand to stop the cable

from "bunching up" and his glove caught on the cable; although plaintiff was not instructed what to do if the cable "bunched up" and was not warned of dangers associated with the winch's operation, no one instructed him to touch the cable while the winch was in operation and he could have unplugged the machine before touching the cable; the winch used by defendant was similar to those used by the entire industry; defendant had used winches for over 25,000 man-days without employee injuries; and defendant had never been issued an OSHA citation for any reason.

Appeals by plaintiff and defendant Hendon Engineering Associates, Inc., from order entered 5 October 1995 by Judge John M. Gardner in Mecklenburg County Superior Court. The appeals were originally heard in the Court of Appeals 21 October 1996 and dismissed as interlocutory on 5 November 1996. *Tinch v. Video Industrial Services,* 124 N.C. App. 391, 477 S.E.2d 193 (1996). The Supreme Court of North Carolina reversed the dismissal of plaintiff's appeal and remanded to the Court of Appeals on 5 December 1997. *Tinch v. Video Industrial Services, Inc.,* 347 N.C. 380, 493 S.E.2d 426 (1997). Heard in the Court of Appeals on remand 9 February 1998.

*John A. Mraz, P.A., by John A. Mraz, for plaintiff appellant.*

*Ball, Barden & Bell, P.A., by Ervin L. Ball, Jr., for defendant appellee Video Industrial Services, Inc.*

SMITH, Judge.

This case arises out of plaintiff Frederick Tinch's (plaintiff) work-related accident on a job site in Asheville, North Carolina. The Metropolitan Sewerage District of Buncombe County (MSD) contracted with Hendon Engineering Associates, Inc. (Hendon), to perform engineering work on the district's sewer lines. Hendon subcontracted part of the project to Video Industrial Services, Inc. (defendant). Plaintiff was hired as a temporary laborer by Western Temporary Services, Inc., and assigned on 30 May 1991 to work for defendant on the MSD project.

Defendant's contract with Hendon provided that defendant would assist with the evaluation of the sewer system. Defendant performed its work in stages, section by section. Each section of sewer pipe, which ran approximately 300 to 500 feet, was cleaned and videotaped by defendant. The videotaping was performed by a sort of "dragging

operation." A camera was lowered into a manhole and hooked to a cable which was connected to an electrically powered winch used to coil the cable. The winch was located on the ground above a more distant manhole. The camera was then dragged through the sewer pipe which provided a videotape of the inside of the sewer line. While plaintiff testified there was an emergency power switch on the winch, plaintiff's mechanical engineering expert and defendant's foreman on the project testified there was not an emergency power switch on the winch.

On 7 June 1991, the day of the accident, plaintiff was assigned to watch the winch during the videotaping and make sure the cable wound on the winch evenly, or, as stated by the witnesses, to make sure it did not "bunch up." As plaintiff reeled the cable in to bring the camera up, the cable began to "bunch up" on the winch's spool. Plaintiff struck the cable with his gloved hand in order to stop the bunching. The second or third time he did this, his glove caught on a frayed section of the cable and plaintiff was unable to pull his hand out of the glove or to reach the emergency switch. Plaintiff was pulled into the winch, which crushed his right hand, arm and several vertebrae, and rendered him a quadriplegic.

Plaintiff's evidence tended to show that plaintiff, who was 29 years old at the time of the accident, had little formal and no technical education. His work experience prior to being hired by defendant consisted of jobs in fast food restaurants. In addition, he had never previously worked around machinery. Jackson T. Morgan, defendant's foreman on the project, testified he had not worked with plaintiff before the day of the accident, did not train plaintiff, and did not know who did. Plaintiff testified he was not instructed what to do if the cable "bunched up" and was not warned of the dangers associated with the winch's operation. He also testified he had previously seen another employee strike the cable when the cable became "bunched up." Though he was tending the winch by himself on the day of the accident, plaintiff testified he had always seen two people tending the winch on prior occasions. Plaintiff's evidence also tended to show defendant previously experienced problems with the winch involved in plaintiff's accident, including cable coming off the spool or "bunching up."

In an affidavit and again in deposition testimony, plaintiff's expert, Russell Charles Lindsay, a mechanical engineer, opined that the operation of a winch or other similar piece of equipment was an inherently dangerous activity. He further stated that the

TINCH v. VIDEO INDUSTRIAL SERVICES, INC.

[129 N.C. App. 69 (1998)]

specific winch being used violated several OSHA regulations with respect to a winch; it was without a switch; without guards at points where workers or passers-by could be caught up and drawn into the winch, and the operator, that is the person controlling the winch, was in a truck which was a substantial distance from the winch itself and where he could not see Mr. Tinch, who was tending the winch. . . . The Video Industrial people responsible set up the winch operation in such a way that was certain the cable would "bunch up" on one end of the spool, and where it was certain the winch tender, Mr. Tinch, would have to use some means to keep the cable from bunching up . . . . Given the situation that existed, the likelihood of an injury got to the point where it was substantially certain to occur.

However, plaintiff testified he was aware of the danger of touching the cable while the winch was operating and admitted he could have simply unplugged the machine in order to straighten the cable. Further, in an affidavit, John L. Kulbitskas, defendant's manager, stated that he was not aware of any injuries relating to the use and operation of winches owned by defendant or anyone else in the 24 years he had been employed by defendant, except for one employee dropping the end of a winch on his foot and one employee cutting his hand on a fire hydrant while setting up a winch. The winch involved in plaintiff's accident, which had been in use for at least ten years prior to 7 June 1991, had never been involved in any other incident involving personal injury. Kulbitskas also stated that the winch involved in plaintiff's accident and other substantially similar winches had been used by defendant for over 25,000 man-days without injury prior to 7 June 1991, and that defendant had never been issued an OSHA citation for any reason.

Plaintiff brought this action against defendant alleging that defendant intentionally engaged in conduct which was substantially certain to cause serious injury or death by requiring plaintiff to work with a winch without adequate training or instruction and by using equipment that violated OSHA regulations and other safety standards. The trial court granted defendant's subsequent motion for summary judgment.

On appeal, plaintiff contends the trial court erred by granting summary judgment in favor of defendant. He argues that his forecast of evidence meets the standard set forth in *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), and demonstrates that defendant

TINCH v. VIDEO INDUSTRIAL SERVICES, INC.

[129 N.C. App. 69 (1998)]

intentionally engaged in conduct substantially certain to cause injury to plaintiff or anyone else in his position.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990). " 'In ruling on the motion, the court must consider the evidence in the light most favorable to the nonmovant, and the slightest doubt as to the facts entitles him to a trial.' " *Bartlett v. Jacobs,* 124 N.C. App. 521, 525, 477 S.E.2d 693, 696 (1996) (citation omitted), *disc. review denied,* 345 N.C. 340, 483 S.E.2d 161 (1997).

The Workers' Compensation Act, N.C. Gen. Stat. §§ 97-9 and 10.1 (1991), has traditionally provided the sole remedy for an employee injured on the job as a result of an accident. *Rose v. Isenhour Brick & Tile Co.,* 344 N.C. 153, 155, 472 S.E.2d 774, 775 (1996). However, in *Woodson,* our Supreme Court held that:

> [W]hen an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act.

329 N.C. at 340-41, 407 S.E.2d at 228. "Substantial certainty is more than a possibility or substantial probability of serious injury but is less than actual certainty." *Regan v. Amerimark Bldg. Products, Inc.,* 127 N.C. App. 225, 227, 489 S.E.2d 421, 423 (1997), *aff'd,* 347 N.C. 665, —— S.E.2d —— (1998).

We believe the facts of the instant case are analogous to those of *Powell v. S & G Prestress Co.,* 114 N.C. App. 319, 442 S.E.2d 143 (1994), *aff'd per curiam,* 342 N.C. 182, 463 S.E.2d 79 (1995). In *Powell,* plaintiff's decedent was hired by defendant as a temporary employee whose duties included attaching reinforcing bars to forming beds used in constructing concrete elements. *Id.* at 321, 442 S.E.2d at 144. The two forming beds ran parallel to each other and were straddled by an overhead crane. *Id.* Defendant's policy was that the crane was not to be moved without a signal person directing its

movement; however, defendant did not train its employees in signaling or designate any of its employees as signal people. *Id.* at 321-22, 442 S.E.2d at 145. While working on one of the forming beds, decedent's left foot became caught under the wheel of the crane and the crane struck and killed him. *Id.* at 322, 442 S.E.2d at 145.

The evidence presented established that defendant did not provide temporary employees with any safety training or safety manuals. *Id.* at 321, 442 S.E.2d at 144. The North Carolina Department of Labor accident report revealed that defendant did not instruct its employees to move away from the crane as it was moving past them; rather, employees were expected to remain working between the wheels and the forming beds. *Id.* at 322, 442 S.E.2d at 145. Though there were no specific requirements for tire guards on the cranes, defendant could have provided adequate protection to employees working in close proximity of the crane by adding tire guards and requiring nonessential employees to move away from the crane. *Id.* at 322-23, 442 S.E.2d at 145. The evidence also showed that the conditions existing at the time of the accident violated industry standards regarding the operation of cranes in proximity to workers, and that inexperienced workers were placed in a work environment unsafe for even experienced personnel. *Id.* at 324, 442 S.E.2d at 146. As a result of the accident, defendant was cited with four OSHA violations by the Department of Labor, in addition to having been cited twice in the past for incidents involving unsafe crane operations. *Id.* at 323, 442 S.E.2d at 145-46.

After reviewing the forecast of evidence in *Powell*, this Court concluded that defendant did not engage in conduct knowing it was substantially certain to cause serious injury or death, and affirmed summary judgment for defendant. *Id.* at 325-26, 442 S.E.2d at 147. We noted that defendant's policy requiring that the crane not be operated without a signal person was being enforced at the time of the accident, and that there were no safety regulations requiring defendant to use tire guards or keep employees a certain distance from moving cranes. *Id.* at 325-26, 442 S.E.2d at 147. Further, no employees had previously been struck by a crane, and defendant's past OSHA violations involving crane operations did not involve the hazard of operating a crane in close proximity to workers. *Id.* at 326, 442 S.E.2d at 147. We stated that while

> [t]he circumstances of Powell's death demonstrate that [defendant] could have taken further steps to ensure the safety of its employees who worked in close proximity to straddle cranes . . .

the forecast of evidence is not sufficient to show that there exists a genuine issue of material fact regarding whether [defendant] engaged in misconduct knowing it was substantially certain to cause serious injury or death.

*Id.*

We likewise conclude in the instant case that plaintiff has failed to forecast evidence establishing defendant knew its conduct was substantially certain to cause serious injury or death. While the evidence, taken in the light most favorable to plaintiff, shows that plaintiff was not instructed what to do if the cable "bunched up" or warned of the dangers associated with the winch's operation, plaintiff admitted that no one instructed him to touch the cable while the winch was in operation and that he could have unplugged the machine before touching the cable but decided against it. The evidence also demonstrated that the winch used by defendant was substantially similar to those used by the entire industry. Prior to the date of plaintiff's accident, defendant had used winches in its operations for over 25,000 man-days without any employee injuries, and plaintiff's injury was the first Kulbitskas, defendant's manager, was aware of in the entire industry, except for an employee dropping the end of the winch on his foot. Additionally, defendant never received an OSHA violation or any other safety violation in the 24 years of Kulbitskas' employment.

The affidavit and deposition testimony of Russell Lindsay fail to create an issue of fact regarding defendant's knowledge of the substantial certainty of serious injury or death from the operation of its winch. We first note that in describing the operation of a winch as an "inherently dangerous activity," Lindsay gave a legal conclusion he was not qualified to render. *See Deitz v. Jackson*, 57 N.C. App. 275, 280, 291 S.E.2d 282, 286 (1982) (holding that the issue of whether an activity is inherently dangerous is a question of law); *Yates v. J. W. Campbell Electrical Corp.*, 95 N.C. App. 354, 360, 382 S.E.2d 860, 864 (1989) (holding a civil engineer was not competent to state his opinion that defendant's state of mind was in "substantial disregard for the lives and safety of motorists," as such statement constituted a legal conclusion). While Lindsay observed that one of the deficiencies of the winch was that it did not have a power switch, plaintiff testified that there was in fact a switch on the winch. Further, while Lindsay noted the winch did not have guards at points where workers or passers-by could be caught and pulled into the winch, he testified that such guarding would be limited by the fact that the cable had to come out of that area. Though Lindsay testified the subject winch vio-

lated various federal OSHA regulations, which are adopted as the rules of this State through N.C. Gen. Stat. § 95-131(a) (1993 & Cum. Supp. 1997), none of the regulations are specifically applicable to the winch. For instance, Lindsay cited 29 C.F.R. § 1917.47 (1991) and 29 C.F.R. § 1917.151 (1991), both of which provide guidelines for guards and stop controls; however, these sections apply only to maritime terminals. Lindsay also cited 29 C.F.R. § 1928.57 (1991) for its guarding provisions; however, this section applies only to the guarding of farm field equipment, farmstead equipment, and cotton gins. The only section cited by Lindsay that may be applicable to the subject winch is 29 C.F.R. § 1910.212 (1991), which sets forth general guarding requirements for all machines. However, even if this section is directly applicable to the subject winch, a violation of this regulation by defendant would not, in itself, be sufficient to create an issue of fact regarding defendant's knowledge that its conduct was substantially certain to cause serious injury or death. *See Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 424 S.E.2d 391 (1993) (holding that evidence alleged by plaintiff injured when his employer instructed him to work on a machine knowing certain dangerous parts of the machine were unguarded in violation of OSHA regulations and industry standards did not rise to the level of substantial certainty of injury or death as required by *Woodson); Kolbinsky v. Paramount Homes, Inc.*, 126 N.C. App. 533, 485 S.E.2d 900, *disc. review denied*, 347 N.C. 267, 493 S.E.2d 457 (1997) (holding that evidence failed to show employer knew its conduct was substantially certain to cause serious injury or death where employer allowed plaintiff, a 17-year-old employee, to operate a circular saw from which the safety guard had been removed in violation of child labor and occupational safety regulations); *Regan*, 127 N.C. App. 225, 489 S.E.2d 421 (holding that worker injured while operating a coater which was part of a paint line at an assembly plant failed to establish his employer knew that requiring him to operate the coater without the guard was substantially certain to cause serious injury or death though employer had previously been cited with an OSHA violation due to the lack of a guard on the coater).

While we acknowledge that defendant could have taken further steps to ensure plaintiff's safety while operating the winch, we hold plaintiff has failed to forecast evidence demonstrating that defendant knew its conduct was substantially certain to result in serious injury or death. Thus, the trial court properly granted summary judgment for defendant Video.

Affirmed.

Judges EAGLES and MARTIN, John C., concur.