ARROYO v. SCOTTIE'S PROFESSIONAL WINDOW CLEANING

[120 N.C. App. 154 (1995)]

Based upon the foregoing, we affirm the judgment of the trial court.

Affirmed.

Judges ARNOLD and GREENE concur.

———————

SANTOS ARROYO, Plaintiff/Appellant v. SCOTTIE'S PROFESSIONAL WINDOW CLEANING, INC., Defendant/Appellee

No. COA94-1046

(Filed 5 September 1995)

**Workers' Compensation § 62 (NCI4th)— employer intentionally engaged in tortious conduct—sufficiency of complaint**

Plaintiff's allegations were sufficient to state a legally cognizable claim under *Woodson v. Rowland*, 329 N.C. 330, that defendant intentionally engaged in conduct that it knew was substantially certain to cause serious injury or death where plaintiff alleged that defendant was aware that the required safe methods for cleaning highly elevated windows were not being practiced; defendant's management accepted and encouraged this fact; the conduct of defendant's supervisor who required plaintiff to lean outward from a small ledge without full protection equipment and refused to allow a fellow employee to at least anchor plaintiff was substantially certain to result in serious injury or death; and plaintiff alleged that defendant knew of this supervisor's past record of ignoring safety requirements, and had in fact allowed this exact cleaning job to be performed in the same inherently dangerous manner by this supervisor.

**Am Jur 2d, Workers' Compensation §§ 75-87.**

**What conduct is willful, intentional, or deliberate within workmen's compensation act provision authorizing tort action for such conduct. 96 ALR3d 1064.**

Appeal by plaintiff from order entered 10 June 1994 by Judge Orlando F. Hudson in Wake County Superior Court. Heard in the Court of Appeals 25 May 1995.

By his amended complaint in this action, plaintiff seeks compensatory and punitive damages for injuries sustained in the course of his

employment with defendant. Plaintiff alleged that he was injured as a result of "wanton, reckless and grossly negligent misconduct substantially certain to cause serious injury or death," on the part of defendant. Defendant's motion to dismiss, made pursuant to G.S. § 1A-1, Rule 12(b)(6) for failure to state a claim upon which relief can be granted, was allowed and plaintiff's claim was dismissed. Plaintiff appeals.

*Law Offices of Thomas J. White, III, by Thomas J. White, III, and Daniel B. Titsworth, for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by David H. Batten, for defendant-appellee.*

MARTIN, John C., Judge.

Contending that he has stated a claim against defendant based on *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), plaintiff assigns error to the dismissal of his action for failure to state a claim upon which relief can be granted. We find merit in his contention.

In our review of the dismissal of this action pursuant to Rule 12(b)(6), we must consider the allegations of plaintiff's complaint as true. *Hickman v. McKoin*, 337 N.C. 460, 446 S.E.2d 80 (1994). According to those allegations, defendant is a North Carolina corporation which provides window cleaning services to businesses, particularly specializing in the cleaning of exterior windows of tall, multi-story commercial office buildings. Defendant, a member of the International Window Cleaning Association (IWCA), had adopted the "Safety Guidelines for Window Cleaning" published by IWCA prior to plaintiff's injury.

Plaintiff, a 23 year old Mexican citizen, had worked as a window washer for defendant a few months in 1992 and continuously from April 1993 until his injury on 15 November 1993. Prior to his employment with defendant, plaintiff had no previous experience in washing the exterior windows of high-rise buildings. Although defendant was aware that the danger of falling and being injured was great in this type of work, plaintiff was never given safety training in the cleaning of high-rise exterior windows. Defendant did not have published safety rules of its own and its management did not enforce safety measures required by the Federal and State Occupational Safety and Health Acts (OSHA) or the IWCA "Safety Guidelines." Safety publications and instructions were not made available to employees despite

ARROYO v. SCOTTIE'S PROFESSIONAL WINDOW CLEANING

[120 N.C. App. 154 (1995)]

defendant's possession of such materials, and OSHA requirements and IWCA recommendations that defendant establish an effective means of communicating safety rules to its employees were not accomplished.

Plaintiff alleges defendant was aware that permitting or requiring a window washer to work from a great height off the ground without the use of a safety line or net was in violation of OSHA rules and IWCA guidelines, and would be inherently dangerous and substantially certain to cause serious injury or death to the worker. Nevertheless, defendant's management often required employees to work without safety lines, or with safety lines attached to the same anchorage as the work line supporting the employee, both of which violate OSHA regulations. Defendant had previously been cited and fined by the North Carolina Department of Labor for such OSHA violations.

By reason of defendant's failure to effectively communicate and enforce applicable safety requirements, and by requiring employees to save time and expense by avoiding "unnecessary" safety measures, defendant encouraged and permitted non-compliance with the safety rules among its supervisors and window washers. On 15 November 1993, defendant's lack of compliance with safety measures resulted in a fall and serious injury to plaintiff.

Defendant had entered into a contract to clean the windows of Burroughs Wellcome's Research Triangle Park office buildings for a fixed price, based primarily on an estimate of the time it would take to complete the job. Defendant's president, John McGrath, personally inspected the site and assessed the time and difficulty required in making the contract a profitable one for defendant. On 15 November 1993, plaintiff's crew of window washers was deployed to clean the windows at Burroughs Wellcome.

Defendant's foreman, Armando Estrada, who was acting within the scope of his employment and under the direction of defendant's management, was plaintiff's supervisor that day. In violation of OSHA regulations, no inspection of the job site was conducted by any member of defendant's management above Estrada during the course of the day plaintiff was injured. Estrada was known to management to be knowledgeable as to safe work methods, though careless and lax as to the enforcement of these safety measures. Estrada assigned the work to be done, selected the equipment to be used, and explained the manner in which the job was to be accomplished.

On the morning of 15 November 1993, Estrada directed plaintiff and another employee, Fernando Ramirez, to wash the exterior windows of an addition to Burroughs Wellcome's Main Administration Building. These particular windows follow the unusual geometric design of the building and are quite difficult to reach. Neither employee had ever washed these windows before, though Estrada had washed the same windows the previous Spring. Instead of washing the windows from the ground using either scaffolding or ladders or a telescoping power washer capable of reaching the windows, plaintiff and Ramirez were instructed to clean the windows from the roof. The safer methods of washing from the ground were considered too cumbersome and time consuming.

Plaintiff alleges that in violation of OSHA regulations and IWCA guidelines, plaintiff and Ramirez were given neither suspension equipment nor safety equipment to complete their task. Suspension and safety lines would have had to continually be attached, detached, and reattached as the employees progressed along the side of the building, interrupting and slowing the flow of work. Instead, plaintiff and Ramirez were instructed to go over the edge of the roof and climb down a ladder to the window ledges without any fall protection. The two employees were to wash the windows, climb back up the ladder, and then repeat the process at the next set of windows. This was the manner in which Estrada had washed the windows earlier. Estrada was well aware of the extreme hazard of falling and serious injury or death to plaintiff by working in this manner.

The design of the building was such that plaintiff was required to stand on a ledge approximately three feet wide and lean outward to wash the "wing" windows of rooms protruding from the side of the building. In order for plaintiff to keep his balance while doing this, plaintiff and Ramirez locked arms, or Ramirez held onto plaintiff's utility belt as plaintiff leaned out to reach the windows. During the lunch break, Estrada asked plaintiff and Ramirez how far they had been able to go that morning. When told that the two had to work slowly because Ramirez was holding onto plaintiff, Estrada instructed them to stop holding on to each other because they could work faster separately. Estrada ordered plaintiff to wash the "wing" windows which extended from the ledge, while Ramirez was to wash the other windows. Ramirez responded that plaintiff would fall, whereupon Estrada replied that plaintiff would not fall, and that the two employees should work separately and faster.

Plaintiff and Ramirez believed they would be fired or suspended if they did not work in the instructed manner, as they knew of other workers who had been fired or suspended for lesser infractions. Feeling they had no choice, plaintiff and Ramirez returned to the roof and began washing the windows separately. While leaning out to wash the "wing" windows, plaintiff lost his footing on the ledge and fell to the ground, suffering serious and permanent injury.

Plaintiff alleges that defendant, acting by and through Estrada, knew that to require plaintiff to work without fall protection from a small ledge while leaning off balance to clean protruding windows was substantially certain to result in plaintiff falling and being seriously injured. Defendant, with full knowledge and realization of the inherent and imminent danger presented, nevertheless consciously, intentionally, and personally ordered plaintiff to work in the described manner, resulting in plaintiff's fall and injury.

Plaintiff alleges defendant's conduct was wanton and grossly negligent and constructively constituted intentional tortious misconduct entitling plaintiff to bring this action. Defendant negligently and wantonly violated several OSHA regulations and IWCA guidelines, as well as defendant's duty to provide plaintiff a reasonably safe place to work and reasonably safe equipment with which to do his assigned work. Despite defendant's knowledge that the manner in which plaintiff had been ordered to work was substantially certain to result in serious injury to plaintiff, defendant took no measures reasonably calculated to reduce or prevent injury to plaintiff. Defendant's actions constituted wanton, reckless, and grossly negligent misconduct substantially certain to cause serious injury or death, and proximately caused the fall and the injuries and damages suffered by plaintiff.

The test on a motion to dismiss for failure to state a claim upon which relief can be granted is whether the pleadings, when taken as true, are legally sufficient to satisfy the elements of at least some legally recognized claim. *Harris v. NCNB*; 85 N.C. App. 669, 355 S.E.2d 838 (1987). In ruling upon a Rule 12(b)(6) motion, the trial court should liberally construe the complaint and should not dismiss the action unless it appears to a certainty that plaintiff is entitled to no relief under any statement of facts which could be proved in support of the claim. *Davis v. Messer*, 119 N.C. App. 44, 457 S.E.2d 902 (1995).

Generally, the Workers' Compensation Act provides the exclusive remedy for an employee injured in a workplace accident. *Regan v.*

*Amerimark Building Products, Inc.*, 118 N.C. App. 328, 454 S.E.2d 849 (1995). However, in *Woodson, supra,* our Supreme Court created an exception allowing an employee to assert a claim against an employer for damages when the employer "intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees . . . ." *Woodson*, 329 N.C. at 340, 407 S.E.2d at 228.

" 'Substantial certainty' under *Woodson* is more than the 'mere possibility' or 'substantial probability' of serious injury or death. No one factor is determinative in evaluating whether a plaintiff has stated a valid *Woodson* claim; rather, all of the facts taken together must be considered." *Regan*, 118 N.C. App. at 331, 454 S.E.2d at 852, *quoting Woodson*, 329 N.C. at 345, 407 S.E.2d at 231. In *Woodson*, our Supreme Court determined that evidence that the employer had allowed employees to work in a trench approximately fourteen feet deep, with vertical sides which were not braced or supported, was sufficient to create an issue of fact as to whether the employer had acted intentionally with knowledge that such conduct was substantially certain to cause a cave-in resulting in serious injury or death. Thus, summary judgment for the employer was reversed. In *Regan*, this Court decided that the plaintiff had sufficiently stated a *Woodson* claim by alleging the defendant installed inoperable emergency switches on machinery and allowed the plaintiff to clean the equipment without informing him that the switches were not working properly. We determined this conduct was substantially certain to result in serious injury or death. *See Mickles v. Duke Power Co.*, 115 N.C. App. 624, 633, 446 S.E.2d 369, 375 (1994) (stating "a reasonable juror could determine that Duke Power's act of sending a lineman up an electrical tower with faulty or incompatible safety equipment was 'substantially certain' to result in the death of a lineman").

In the present case, plaintiff alleges defendant was aware that the required safe methods for cleaning highly elevated windows were not being practiced, and that defendant's management accepted and encouraged this fact. The conduct of defendant's supervisor, Estrada, who required plaintiff to lean outward from a small ledge without fall protection equipment and refused to allow a fellow employee to at least anchor plaintiff, was substantially certain to result in serious injury or death. Plaintiff has alleged defendant knew of this supervisor's past record of ignoring safety requirements, and in fact, defendant had previously allowed this exact cleaning job to be performed in the same inherently dangerous manner by this supervisor. Liberally

construed, these allegations are sufficient to state a legally cognizable claim under *Woodson* that defendant intentionally engaged in conduct that it knew was substantially certain to cause serious injury or death.

Plaintiff has also alleged that defendant's conduct was intentional, wanton, reckless, and grossly negligent, and he has specifically asked for punitive damages. We hold, pursuant to *Regan, supra,* that plaintiff's allegations are sufficient to state a claim for punitive damages.

For the reasons stated, the order dismissing this action is reversed and this case is remanded for further proceedings.

Reversed and remanded.

Judges JOHNSON and GREENE concur.