STATE OF NORTH CAROLINA v. WALTER GOLDSTON

No. 1A96

(Filed 13 June 1996)

### Homicide § 266 (NCI4th)— attempted robbery and felony murder—sufficiency of evidence

The State's evidence was sufficient for the jury to find defendant guilty of attempted robbery and felony murder where it tended to show that the victim was found shot to death behind the counter of his convenience store; the drawer to the cash register was open; four shots had been fired from the victim's pistol, which was lying next to the victim's hand; three of the bullets fired from the victim's pistol were located in the store and the fourth was removed from defendant's arm at a hospital; and defendant went to considerable lengths to concoct a story that would explain his wound.

**Am Jur 2d, Evidence §§ 1430-1499.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Hudson, J., at the 21 April 1995 Criminal Session of Superior Court, Durham County, upon a verdict of guilty of first-degree murder in a case tried capitally. The defendant's motion to bypass the Court of Appeals as to an additional conviction for attempted robbery with a firearm was allowed 5 January 1996. Heard in the Supreme Court 16 May 1996.

The defendant was tried for the first-degree murder and attempted robbery with a firearm of General Wesley Cheek, Jr. The evidence showed that on 16 December 1992, the victim was found shot to death behind the counter of his Durham convenience store, B's Stop and Shop, at approximately 8:30 a.m. The drawer to the cash

register was open. The victim had six gunshot wounds, and five bullets were recovered from the body, three from a .38- or .357-caliber gun and two from a .22-caliber gun. A .25-caliber automatic pistol was lying by Mr. Cheek's hand, and four shots had been fired from the gun. Three of the bullets were located in the store. The fourth was removed from the defendant's arm at a hospital that afternoon. Blood not matching the victim's was also located at the scene.

Sometime before 9:00 a.m., the defendant went to the home of Curtis McPherson, who was asleep with his girlfriend. Robert Davis arrived at approximately the same time carrying a .22-caliber revolver and what appeared to be a .38- or .357-caliber gun that McPherson and his girlfriend had seen the defendant carrying on previous occasions. Davis said the defendant had been shot by someone trying to rob him with a small gun. Davis said he had to get rid of the guns, and the defendant told him to get rid of the defendant's gloves as well.

The defendant refused to go to the hospital and asked Davis to cut the bullet out of his arm with a razor blade. When Davis's attempts were unsuccessful, the defendant asked if anyone knew someone who owned a .22- or .25-caliber gun. Davis contacted Reginald Wall, told him there had been a shoot-out, and asked him to bring his gun to McPherson's house. When Wall arrived, the defendant explained that he needed to use the gun "for a cover." The defendant fabricated a story that they had been making a taped program about teenagers and drugs at a housing project when Wall dropped his gun, which accidentally discharged and shot the defendant in the arm. The group then went to the housing project, where the defendant reminded Wall to scrape the gun on the concrete so it would appear to have been dropped. Wall fired the gun at the ground, and the defendant and his nephew made a recording about the scene. The defendant determined that in the event that the bullet in his arm had not been fired from a .25-caliber gun, he would add to the story that once that gun went off, two people started shooting at them. McPherson then drove the defendant to the hospital.

At the hospital, the defendant told a nurse in the emergency room that he had been struck by a stray bullet and had not realized it for awhile. He then told a doctor that he had been shot when a friend dropped a gun that went off when it hit the ground. The bullet removed from the defendant's arm was determined to have been fired by the gun found near the victim.

**STATE v. GOLDSTON**

[343 N.C. 501 (1996)]

The jury returned a verdict of guilty of first-degree murder under the felony murder rule and attempted robbery with a firearm. After a capital sentencing proceeding, the jury recommended a sentence of life imprisonment. The court consolidated the attempted robbery with a firearm and murder convictions for sentencing and imposed a life sentence. The defendant appealed.

*Michael F. Easley, Attorney General, by Ronald M. Marquette, Special Deputy Attorney General, for the State.*

*William J. Cotter and Craig B. Brown for the defendant-appellant.*

WEBB, Justice.

In his sole assignment of error, the defendant contends that the trial court erred in denying his motion to dismiss on the ground that the evidence was insufficient to support the defendant's conviction of felony murder. The defendant does not argue that there was not substantial evidence that a murder and attempted robbery were committed. He argues that all the evidence was circumstantial and that there was not substantial evidence that he committed the crimes. In order to withstand a motion to dismiss, there must be substantial evidence of all elements of the offense. It is immaterial whether the evidence is circumstantial or direct. *State v. Jones*, 303 N.C. 500, 504, 279 S.E.2d 835, 838 (1981). A jury, when considering circumstantial evidence, may make an inference on an inference. *State v. Childress*, 321 N.C. 226, 232, 362 S.E.2d 263, 267 (1987); Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 82 (4th ed. 1993).

There is strong circumstantial evidence in this case that the defendant shot and attempted to rob Mr. Cheek. Mr. Cheek was shot to death behind the cash register in his store. Four bullets had been fired from Mr. Cheek's pistol; three of the bullets were found in the store, and one was removed from the defendant's arm.

The most logical conclusion from this evidence is that when a robbery attempt was made on Mr. Cheek, he fired four times to prevent the robbery, and one of the bullets struck the robber who was the defendant. It is hardly likely that Mr. Cheek fired four times in his store if a robbery was not in progress. It is also improbable that Mr. Cheek or some other person shot the defendant before or after the attempted robbery.

There was also evidence that the defendant went to considerable lengths to concoct a story that would explain his wound. This showed guilty knowledge and could be considered by the jury.

We hold that the evidence was sufficient for the jury to find the defendant guilty of attempted robbery with a firearm and felony murder.

The felony upon which the first-degree murder conviction was based in this case was the attempted robbery with a firearm. The jury did not convict the defendant based on premeditation and deliberation, and the attempted robbery conviction merged into the felony murder conviction. Therefore, judgment should have been arrested on the attempted robbery with a firearm conviction. *State v. Silhan*, 302 N.C. 223, 275 S.E.2d 450 (1981). The court consolidated the murder and attempted robbery with a firearm convictions and imposed a life sentence, which was required for the murder conviction. The defendant was thus not prejudiced by this consolidation. Accordingly, we arrest judgment on the sentence for attempted robbery with a firearm and do not disturb the sentence for felony murder.

CASE NO. 93CRS1274, FIRST-DEGREE MURDER—NO ERROR.

CASE NO. 93CRS1275, ATTEMPTED ROBBERY WITH A FIREARM—JUDGMENT ARRESTED.